NO. 17-71636

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*,

Petitioners,

STATE OF NEW YORK, *et al.*,

Petitioner-Intervenors,

v.

SCOTT PRUITT, ADMINISTRATOR OF UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, *et al.*,

Respondents.

---

# MOTION TO COMPLETE THE ADMINISTRATIVE RECORD OR, IN THE ALTERNATIVE, TO CONSIDER EXTRA-RECORD EVIDENCE

---

PATTI A. GOLDMAN
MARISA C. ORDONIA
KRISTEN L. BOYLES
Earthjustice
705 Second Avenue, Suite 203
Seattle, WA 98104
(206) 343-7340 | Phone
(206) 343-1526 | Fax
pgoldman@earthjustice.org
mordonia@earthjustice.org
kboyles@earthjustice.org
*Attorneys for Petitioners*

TABLE OF CONTENTS


INTRODUCTION ....................................................................................1

BACKGROUND ....................................................................................3

I. THE 2007 PETITION TO BAN CHLORPYRIFOS AND EPA'S FINDINGS AND ACTIONS IN RESPONSE..........................3

II. THE MARCH DOCUMENTS AT ISSUE IN THIS MOTION...........6

ARGUMENT ....................................................................................8

I. THE MARCH DOCUMENTS ARE PROPERLY PART OF THE ADMINISTRATIVE RECORD.................................................9

*A. The March Documents Are Part of the Whole Record Before EPA on Which This Court Must Base Its Review Of The Pruitt Order*.........................................................9

B. *The March Documents Fill In Gaps In The Record For The Timeframe When The Reversal Occurred*....................................10

C. *The March Documents Are Relevant To LULAC's Claims That The Pruitt Order Is Arbitrary And Capricious*.....................12

D. *The March Documents Include Material Commonly Included In Administrative Records*.............................................15

*E. The Deliberative Process Privilege Poses No Barrier To Adding The March Documents To The Administrative Record.* .........................................................................17

II. IN THE ALTERNATIVE, THE MATERIALS ARE ADMISSIBLE AS EXTRA-RECORD EVIDENCE..........................18

CONCLUSION....................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Asarco, Inc. v. EPA*,
616 F.2d 1153 (9th Cir. 1980) ....................19

*In re Cal. Power Exch. Corp.*,
245 F.3d 1110 (9th Cir. 2001) ....................2

*Center for Biological Diversity v. Rumsfeld*,
198 F. Supp. 2d 1139 (D. Ariz. 2002) ....................17

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
401 U.S. 402 (1971)....................9

*Fed. Commc'n Comm'n v. Fox Television Stations*,
556 U.S. 502 (2009)....................14, 15, 18

*FTC v. Warner Comm. Inc.*,
742 F.2d 1156 (9th Cir. 1984) ....................18

*Greenpeace v. Nat'l Marine Fisheries Serv.*,
55 F. Supp. 2d 1248 (W.D. Wash. 1999) ....................16

*'Īlio'ulaokalani Coalition v. Rumsfeld*,
464 F.3d 1083 (9th Cir. 2006) ....................16

*Lands Council v. Powell*,
395 F.3d 1019 (9th Cir. 2005) ....................18

*Mobil Oil Corp. v. EPA*,
879 F.2d 698 (9th Cir. 1989) ....................17

*Motor Vehicles Mfrs Ass'n v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983)....................13, 14

*Native Village of Point Hope v. Jewell*,
740 F.3d 489 (9th Cir. 2014) ....................16

*Nw. Coal. for Alts. to Pesticides v. U.S. EPA*,
544 F.3d 1043 (9th Cir. 2008) ....................9

*In Re PANNA v. EPA*,
798 F.3d 809 (9th Cir. 2015) ....................................................................5

*In Re PANNA v. EPA*,
840 F.3d 1014 (9th Cir., 2016) ................................................................5

*People of State of Cal. ex rel. Lockyer v. U.S. Dep't of Agric.*,
No. C05-03508 EDL, 2006 WL 708914 (N.D. Cal. Mar. 16, 2006) .................15

*Portland Audubon Soc'y v. Endangered Species Comm.*,
984 F.2d 1534 (9th Cir. 1993) ..................................................................10

*Rocky Mountain Wild v. Walsh*,
No. 15.cv.0615-WJM, 2016 WL 8234665 (D. Colo. May 10, 2016) ................15

*SAIF Corp./Oregon Ship v. Johnson*,
908 F.2d 1434 (9th Cir. 1990) ....................................................................2

*San Luis & Delta-Mendota Water Auth. v. Locke*,
776 F.3d 971 (9th Cir. 2014) ....................................................................18

*Sierra Club v. Costle*,
657 F.2d 298 (D.C. Cir. 1981)....................................................................14

*Telecomm. Research & Action Ctr. v. FCC*,
750 F.2d 70 (D.C. Cir. 1984)........................................................................2

*Thompson v. U.S. Dep't of Labor*,
885 F.2d 551 (9th Cir. 1989) ....................................................................13

*Tummino v. Torti*,
603 F. Supp. 2d 519 (E.D.N.Y. 2009), *amended by* 2013 WL
865851 (E.D. N.Y. March 6, 2013) ............................................................14

*United Farm Workers v. Adminstr., EPA*,
No. C 07-3950, 2008 WL 3929140 (N.D. Cal. Aug. 26, 2008)...................16, 20

*Wash. Toxics Coal. v. U.S. Dep't of Interior*,
No. C04-1998C, 2005 U.S. Dist. LEXIS 45566 (W.D. Wash. June
14, 2005) ....................................................................................................15

**Statutes**

5 U.S.C. § 706(2)(A), (C) ....................................................................................9

7 U.S.C. § 136n(b) ...........................................................................................9

21 U.S.C. § 346a(b) & (c).................................................................................3

21 U.S.C. § 346a(h)(5)......................................................................................9

**Federal Register**

80 Fed. Reg. 69,080 (Nov. 6, 2015)...........................................................3, 4

81 Fed. Reg. 81,049 (Nov. 17, 2016)..............................................................4

82 Fed. Reg. 16,581 (Apr. 5, 2017) .......................................................*passim*

# INTRODUCTION

The underlying case before the Court seeks review of the order issued by Administrator of the Environmental Protection Agency ("EPA") Scott Pruitt, denying a 2007 Petition to cancel all EPA tolerances for the pesticide chlorpyrifos. Excerpts of Record ("ER") 25-36, 82 Fed. Reg. 16,581 (Apr. 5, 2017) ("Pruitt Order"). Petitioners League of United Latin American Citizens *et al.* ("LULAC") challenge the substance of the Pruitt Order, a challenge this Court will review based on the agency's administrative record. This motion seeks to complete the administrative record by adding a discrete set of documents that were before the agency when it made its decision, which provide an account of the last stages of EPA's decision making and are relevant to LULAC's claims. In the alternative, LULAC asks the Court to consider these documents as extra-record evidence.

The parties have engaged in extensive communications about the content of the administrative record and have resolved many issues concerning its completeness, culminating in EPA's filing of a certified supplemental index to the record. ECF 36-2. However, the parties have been unable to reach agreement regarding a discrete set of documents from March 2017 ("March documents"), which consist of: (1) EPA emails and notes chronicling the events immediately prior to issuance of the Pruitt Order; (2) the draft of the decision on the 2007 Petition that was jettisoned by Administrator Pruitt; and (3) records of meetings

between the regulated entities and the Administrator and his transition team. EPA takes the position that the March documents are not properly part of the record.

The contents of the March documents are no mystery; all but one is in the public domain, and the gist of the undisclosed document is evident from the Pruitt Order's abrupt reversal of the agency's steady, science-driven path toward revocation of chlorpyrifos tolerances. Indeed, LULAC has already submitted the publicly available March documents to the Court in support of LULAC's alternative request for mandamus relief, review of which is not limited to an administrative record, and LULAC's request that the Court waive administrative exhaustion procedures because it would be futile for LULAC to pursue them.[1] Declaration of Marisa Ordonia and Exhibits A-C (Jan. 19, 2018). Because the March documents are also relevant to LULAC's challenge to the substance of the Pruitt Order, this motion asks that the Court consider them in ruling on that claim, either as part of the record or as extra-record evidence.

---

[1] Whether to issue a writ of mandamus to end to an agency's unreasonably delay is decided upon *de novo* review of the factors established in *Telecomm. Research & Action Ctr. v. FCC*, 750 F.2d 70, 75 (D.C. Cir. 1984). *See In re Cal. Power Exch. Corp.*, 245 F.3d 1110, 1124-25 (9th Cir. 2001). As to exhaustion of administrative remedies, "[t]his court, along with every other circuit to consider the issue, has held that there is no exhaustion requirement if resort to the agency would be futile," *SAIF Corp./Oregon Ship v. Johnson*, 908 F.2d 1434, 1441 (9th Cir. 1990), and review of exhaustion claims is not limited to an administrative record.

# BACKGROUND

## I. THE 2007 PETITION TO BAN CHLORPYRIFOS AND EPA'S FINDINGS AND ACTIONS IN RESPONSE.

Chlorpyrifos is a widely used organophosphate pesticide that causes acute poisonings and damage to the developing brain from prenatal exposures. In September 2007, two of the petitioners, Pesticide Action Network North America ("PANNA") and Natural Resources Defense Council ("NRDC") petitioned EPA to revoke all chlorpyrifos tolerances based on the mounting evidence that chlorpyrifos damages children's brains from exposures far lower than what EPA's current tolerances allow.

To decide the Petition, EPA must apply the standards set out in the Federal Food, Drug and Cosmetic Act ("FFDCA"), which authorizes EPA to establish tolerances prescribing the maximum residue of a pesticide allowed on food. 21 U.S.C. § 346a(b) & (c). EPA "may establish or leave in effect a tolerance for a pesticide chemical residue in or on food only if the Administrator determines that the tolerance is safe. The Administrator shall modify or revoke a tolerance if the Administrator determines it is not safe." *Id.* § 346a(b)(A)(i).

In response to the Petition, EPA prioritized its review of chlorpyrifos and engaged in extensive and iterative reviews of the scientific evidence and the risks posed by chlorpyrifos. Certified Index to the Administrative Record ("AR") 1437 (work plan); 80 Fed. Reg. 69,080, 69,082 (Nov. 6, 2015). In December 2014, after

two rounds of EPA evaluations of the scientific evidence and peer-reviews by EPA's Scientific Advisory Panel, EPA released its Revised Human Health Risk Assessment ("2014 Risk Assessment"), finding that chlorpyrifos causes reduced IQ, attention problems, and learning disabilities at lower exposures than what EPA currently allows. ER 184-714. In October 2015, EPA proposed to revoke all chlorpyrifos tolerances because EPA "is unable to conclude that the risk from aggregate exposure from the use of chlorpyrifos meets the safety standard," and specifically found that children are exposed to unsafe levels of chlorpyrifos in drinking water, with infants most at risk. ER 1132-63 (80 Fed. Reg. 69,080, 69,082-83, 69,106 (Nov. 6, 2015)). In the proposed revocation rule, EPA indicated that its 2014 risk assessment likely did not protect against damage to the developing brain at lower exposure levels. *Id*. at 69,080, 69,105-06. It continued to assess those risks, and in 2016, updated its risk assessment, finding that chlorpyrifos presents unacceptable safety risks from exposures in food, drinking water, spray drift, and worker activities. ER 1249-89. EPA reaffirmed its proposal to revoke chlorpyrifos tolerances because "the risk from the potential aggregate exposure does not meet the FFDCA safety standard." ER 1290-93 (81 Fed. Reg. 81,049, 81,050 (Nov. 17, 2016)).

EPA had a March 31, 2017 deadline from this Court to make a final decision

on the 2007 Petition. *In Re PANNA v. EPA*, 840 F.3d 1014 (9th Cir., 2016).[2] On March 29, 2017, the new Administrator, who was sworn in on February 17, 2017, issued an order denying the 2007 Petition and leaving chlorpyrifos tolerances in place for five or more years while the agency continued to study the science. 82 Fed. Reg. at 16,583. The Pruitt Order neither revoked the proposed rule, nor revisited EPA's findings that chlorpyrifos was unsafe. It denied the Petition and claimed it could put off any chlorpyrifos tolerance decision until October 1, 2022, when EPA must complete a review of older pesticides pursuant to a different statute. *Id*. Within 60 days, LULAC filed administrative objections and this lawsuit, and several states also filed objections and intervened in this case. ER 121-83.[3]

[2] This Court had issued a writ of mandamus upon finding EPA's delay in failing to act on the 2007 Petition "egregious" and court-ordered deadlines "necessary to end this cycle of incomplete responses, missed deadlines, and unreasonable delay." *In Re PANNA v. EPA*, 798 F.3d 809, 811, 813 (9th Cir. 2015).

[3] In addition to the March documents, LULAC has a letter from EPA to several U.S. Senators responding to their inquiries and describing EPA's plans to put off deciding the objections until it prepares another risk assessment, seeks public comments, proposes a new regulatory decision, seeks another round of comments, and eventually makes a final regulatory decision for chlorpyrifos. Exhs. D-F to Ordonia Decl. These plans are relevant to the request for mandamus relief and the futility of waiting for EPA to rule on the objections before judicial review of the Pruitt Order. LULAC is not asking that this correspondence be added to the record or otherwise considered in deciding the challenge to the substance of the Pruitt Order.

## II. THE MARCH DOCUMENTS AT ISSUE IN THIS MOTION.

Administrator Pruitt's decision to deny the 2007 Petition garnered extensive media coverage and spurred several Freedom of Information Act ("FOIA") requests, which put all but one of the March documents into the public domain and confirmed the remaining documents existence. The March documents fall into four categories:

1. A record of a March 1, 2017 meeting between Administrator Pruitt and Andrew Liveris, CEO of Dow Chemical, that was released under FOIA and is publicly available on the government's FOIA Online website. Ordonia Decl. ¶ 5 & Exh. A.

2. Internal EPA emails chronicling EPA meetings, statements about directions for the chlorpyrifos decision from the Administrator's chief of staff, the exchange of drafts, and finalization of the Pruitt Order and associated press release, as well as records of a March 1, 2017 meeting between members of the American Farm Bureau Federation and EPA's transition team and Administrator Pruitt. Ordonia Decl. ¶ 6 & Exh. B (released under FOIA and available on FOIA Online website).

3. Extemporaneous notes of meetings, other communications, and tasks pertaining to chlorpyrifos in March 2017, kept by the Acting Administrator for Chemical Safety and Pollution Prevention, who provided excerpts of three pages of the notes to the New York Times, where they are available to the public. Ordonia Decl. ¶ 7 & Exh. C.[4]

---

[4] The calendar is available at https://foiaonline.regulations.gov/foia/action/public/view/request?objectId=090004d28141f7e4; the internal emails at https://www.nytimes.com/interactive/2017/10/21/us/document-EPA-Chlorpyrifos-FOIA-Emails-to-NYT.html; and the Acting Administrator's notes are available at https://www.nytimes.com/interactive/2017/10/21/us/document-EPA-Chlorpyrifos-FOIA-Emails-to-NYT.html, and referenced in the October 21, 2017, New York Times article "Why Has the E.P.A. Shifted on Toxic Chemicals? An Industry

4. The draft EPA decision on the 2007 Petition that had been developed by EPA staff before Administrator Pruitt reversed course in March 2017.

The March documents fill a gap in the record, which contains no documents after the presidential inauguration other than the Pruitt Order. The documents show that, before Scott Pruitt became the EPA Administrator on February 17, 2017, EPA was on track to finalize the proposed revocation based on its findings that chlorpyrifos is unsafe. Beginning on March 1, 2017, EPA staff sought to brief the Administrator on the upcoming chlorpyrifos deadline, calling it a "hot" regulatory action. Exh. B at 6-11, 16. On that same day, EPA transition team members and the Administrator met with the members of the American Farm Bureau Federation, who made a plea not to reduce the number of pesticides on the market and for "a reasonable approach" involving the agricultural sector in the chlorpyrifos decision. Exh. B at 1-5. At meetings on March 3 and March 6, 2017 with the Acting Administrator, the Administrator's chief of staff indicated he did not want EPA forced into a box by the 2007 Petition and asked for a briefing paper on other options. Exh. B at 11-12; Exh. C at 1-2. One option would have been to ask this Court for an extension of the March 31, 2017 deadline. Exh. C at 3. Another would have entailed a full or partial phase-out of chlorpyrifos over time,

Insider Helps Call the Shots," *available at* https://www.nytimes.com/2017/10/21/us/trump-epa-chemicals-regulations.html.

but Dow resisted to agreeing to a phase-out after the election. Exh. C at 1-2. The Administrator's chief of staff told colleagues that EPA staff "are trying to strong arm us. I scared them Friday", "They are getting us information from Friday but they know where this is headed . . .." Exh. B at 17. Staff then began to draft a denial based on "legalistic arg[uments]" pertaining to a new administration's ability to change priorities and timelines. Exh. C at 2. On March 9, 2017, Admnistrator Pruitt met with the CEO of Dow Agrosciences in Houston, Texas. Exh. A. A draft denial began circulating on March 16, 2017, was finalized and signed by the Administrator on March 29, 2017, and was released that same day along with a press release emphasizing the need to provide regulatory certainty to American farmers, the reversal of the previous Administration's steps to ban a widely used pesticide, referred to as a predetermined result, and the benefits of freeing American farmers from "trade disruptions that could have been caused by an unnecessary, unilateral revocation of chlorpyrifos tolerances in the United States." Exh. B at 22-35, 43.

## ARGUMENT

This motion asks the Court to order that the March 2017 documents be included in the administrative record for the Pruitt Order. In the alternative, this motion asks the Court to allow consideration of these documents as extra-record evidence.

## I. THE MARCH DOCUMENTS ARE PROPERLY PART OF THE ADMINISTRATIVE RECORD.

### *A. The March Documents Are Part of the Whole Record Before EPA on Which This Court Must Base Its Review Of The Pruitt Order.*

The Pruitt Order's compliance with the FFDCA is reviewed under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. *Nw. Coal. for Alts. to Pesticides v. U.S. EPA*, 544 F.3d 1043, 1047 (9th Cir. 2008). Under the APA, the court shall hold unlawful and set aside an agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A), (C).[5]

To determine whether the agency's decisions comports with these standards, courts must review the "whole record" before the agency at the time it made its decision. 5 U.S.C. § 706; *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 419-20 (1971). In *Overton Park*, the Supreme Court explained that the APA directs courts to engage in a "thorough, probing, in-depth review" of agency action. *Id.* at 415. Such a review requires a full record of all documents before the agency:

---

[5] If review is not obtainable under the FFDCA, 21 U.S.C. § 346a(h)(5), LULAC seeks review under the Federal Insecticide, Fungicide, and Rodenticide Act, which authorizes a court to uphold EPA's determination "if it is supported by substantial evidence when considered on the record as a whole." 7 U.S.C. § 136n(b). Under either statutory basis for review, the Court will conduct its review based on an administrative record.

> The "whole record" includes everything that was before the agency pertaining to the merits of its decision. An incomplete record must be viewed as a "fictional account of the actual decision making process." … If the record is not complete, then the requirement that the agency decision be supported by "the record" becomes almost meaningless.

*Portland Audubon Soc'y v. Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir. 1993) (citations omitted).

The March documents should be added to the administrative record because they were before EPA. They are, therefore, part of the "whole record" for this Court's review of the Pruitt Order.

B. *The March Documents Fill In Gaps In the Record For The Timeframe When The Reversal Occurred*.

The March documents fill in gaps in the administrative record certified by EPA. Other than the Pruitt Order itself, the certified record has no content for the period of time after Mr. Pruitt became EPA Administrator.

According to one of the March documents, EPA lawyers carefully drafted the Pruitt Order to present legalistic arguments that would support the Administrator's decision to deny the Petition. Exh. C at 2. Such legalistic arguments likely conceal the real reasons for the denial. By way of example, the Pruitt Order acknowledges that the fact that chlorpyrifos is widely used is "not a legal consideration," but then it expresses a desire to engage in further study because removing chlorpyrifos from the market is "an extremely significant policy choice." 82 Fed. Reg. at 16,590.

The March documents offer greater insights into the reasons for the denial and evidence that it was based on factors that are "not a legal consideration." They tell a story of the agency moving toward granting the Petition and finalizing the chlorpyrifos tolerance revocation rule before Mr. Pruitt became the Administrator. They chronicle the agency's 180-degree turn after the Acting Administrator met with and received marching orders from Mr. Pruitt's chief of staff. Political aides to the Administrator called the shots and resisted being forced into a box by the 2007 Petition and this Court's deadline for final action on the Petition. Exh. B at 15; Exh. C at 1-2. From the first meeting between the Acting Administrator and the Administrator's chief of staff, it is clear that granting the 2007 Petition and revoking chlorpyrifos tolerances was not an option. Instead, the chief of staff called for a briefing on other options that included asking the Court for an extension of the March 31, 2017 deadline, postponing regulatory action, or limiting the extent and timing of tolerance revocations to what Dow would agree to do. Exh. C at 1-2.

The March documents also disclose that, during his first month as Administrator and less than a month before the court-ordered deadline for a final decision on the Petition, Mr. Pruitt met with the CEO of Dow and, along with his transition team, with members of the American Farm Bureau Federation, who made a pitch to retain chlorpyrifos. Exh. A; Exh. B at 1-5. The Administrator's

comments at the Farm Bureau meeting refer to "a new day, a new future, for a common sense approach to environmental protection" and emphasize "the tremendous economic impact agriculture plays in our economy" and an eagerness to work closely with the agricultural community. Exh. B at 4. At the meeting, a member of the transition team touted the new Administration's commitment to developing a relationship with the agricultural community "based on partnerships not on regulations and enforcement." Exh. B at 3. EPA's refusal to include records of these meetings in the administrative record is particularly indefensible and cannot be reconciled with EPA's inclusion in the record of meeting agendas, participants, and information exchanged for numerous meetings between EPA staff and Dow Agrosciences. *See, e.g.*, Certified Index AR 1354, 1359, 1372, 1378, 1386-87, 1411, 1417, 1440-41, 1449, 1454, 1458-59.

In addition, in a press release developed along with the Pruitt Order, EPA wrote: "We need to provide regulatory certainty to the thousands of American farmers that rely on chlorpyrifos. . ." and that "[b]y reversing the previous Administration's steps to ban one of the most widely used pesticides in the world, we are returning to using sound science in decision-making – rather than predetermined results." Exh. B at 43.

C. *The March Documents Are Relevant to LULAC's Claims That The Pruitt Order Is Arbitrary And Capricious*.

An agency decision is arbitrary and capricious if "the agency has relied on

factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicles Mfrs Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). The administrative record must enable the Court to evaluate the agency action against these rational decision-making standards. Accordingly, "[t]he whole administrative record … consists of all documents and materials directly or indirectly considered by agency decision-makers and includes evidence contrary to the agency's position." *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (citations omitted).

In its challenge to the Pruitt Order, LULAC claims that the Order is arbitrary and capricious because it is contrary to the record and wholly at odds with the repeated findings made by EPA and its Scientific Advisory Panel that chlorpyrifos is unsafe. By ignoring, indeed not even mentioning, these findings, the Administrator failed to "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *State Farm*, 463 U.S. at 43.

As the mirror image of this omission, LULAC claims that the Administrator denied the Petition for impermissible reasons. The March documents paint a

picture of a preordained outcome based on the desires of new leadership, with safety – the controlling statutory factor – left entirely out of the equation. They show that the decision to deny the 2007 Petition was predicated not on the safety of chlorpyrifos, but on other factors "which Congress has not intended it to consider [and] entirely failed to consider an important aspect of the problem." *State Farm*, 463 U.S. at 43; *see also Sierra Club v. Costle*, 657 F.2d 298, 409 (D.C. Cir. 1981) (succumbing to pressure to take a particular course of action for improper reasons is arbitrary and capricious); *Tummino v. Torti*, 603 F. Supp. 2d 519, 544-46 (E.D.N.Y. 2009), *amended by* 2013 WL 865851 (E.D.N.Y. March 6, 2013) (direction from political appointee to deny a citizen petition decision based on non-statutory factors and in disregard of agency policies and the evidence violates standards of good faith and reasoned decision-making).

In addition, the draft decision on the 2007 Petition before the Administrator did an about-face is relevant to whether the Pruitt Order satisfies the standards for such reversals laid out in *Fed. Commc'n Comm'n v. Fox Television Stations*, 556 U.S. 502 (2009). *Fox Television* requires agencies to provide a reasoned explanation for such reversals that comports with *State Farm* and a more detailed explanation when the agency contradicts prior factual findings and circumstances that underlay or were engendered by the earlier agency decision. 556 U.S. at 515-16. It is no secret that EPA had prioritized action on the 2007 Petition and had

been on a science-driven path toward revoking chlorpyrifos tolerances. Its reasoning and the factors the agency felt compelled to address in early 2017 will identify factors EPA had to address under *Fox Television* in shifting course. The draft decision will show how EPA addressed the unbroken series of findings by it and its Scientific Advisory Panel that chlorpyrifos is unsafe, in light of the controlling statutory mandates, before the 180-degree turn. It would elucidate the prior factual findings and circumstances underlying the final stages of decision-making on the 2007 Petition, which the Administrator had to address under *Fox Television*.

D. *The March Documents Include Material Commonly Included In Administrative Records.*

While the March documents come in the form of emails, notes, calendars, and a draft decision such records are commonly found in administrative records. *See, e.g.*, *Rocky Mountain Wild v. Walsh*, No. 15-cv-0615-WJM, 2016 WL 8234665 (D. Colo. May 10, 2016) (granting motion to add notes of agency meetings taken by agency staff to the record); *People of State of Cal. ex rel. Lockyer v. U.S. Dep't of Agric.*, No. C05-03508 EDL, 2006 WL 708914, at *4 (N.D. Cal. Mar. 16, 2006) (including in the administrative record "drafts, internal reviews and critiques, interagency reviews, dissent from agency scientists, e-mail exchanges or other correspondence between and among the agencies and/or others involved in the process and agency meeting notices."); *Wash. Toxics Coal. v. U.S.*

*Dep't of Interior*, No. C04-1998C, 2005 U.S. Dist. LEXIS 45566 (W.D. Wash. June 14, 2005) (including in the record "documents pertaining to internal agency deliberations preceding the ultimate findings" to ascertain whether the agency failed to consider an important aspect of the problem). Courts have specifically ordered agencies to complete the record by including agency drafts. *See, e.g.*, *United Farm Workers v. Adminstr., EPA*, No. C 07-3950, 2008 WL 3929140, at *2 (N.D. Cal. Aug. 26, 2008) (compelling EPA to include drafts and internal correspondence).

Moreover, courts, including this Court, have often relied on such internal agency documents, including draft decisions, in holding an agency action arbitrary and capricious. *See, e.g., Native Village of Point Hope v. Jewell*, 740 F.3d 489, 499-505 (9th Cir. 2014) (relying on "internal emails" and "draft scenarios" to hold an environmental impact statement arbitrary and capricious); *ʻĪlioʻulaokalani Coalition v. Rumsfeld*, 464 F.3d 1083, 1089-90, 1098-1102 (9th Cir. 2006) (relying on minutes of internal agency meetings, staff communications and internal agency reports to hold an environmental impact statement arbitrary and capricious); *Greenpeace v. Nat'l Marine Fisheries Serv*., 55 F. Supp. 2d 1248, 1265 (W.D. Wash. 1999) (considering draft determinations and internal memoranda where the record "does not contain a single sentence reflecting the reasons" why the agency believed its action complied with controlling legal requirements); *Center for*

*Biological Diversity v. Rumsfeld*, 198 F. Supp. 2d 1139, 1147 (D. Ariz. 2002) (draft relevant in determining whether changes from the draft to final were arbitrary and capricious).

### *E. The Deliberative Process Privilege Poses No Barrier To Adding The March Documents To The Administrative Record.*

Unlike many disputes over the scope of the administrative record, this motion will not unveil undisclosed, internal agency deliberations. EPA released the bulk of the documents under FOIA, without claiming, and thereby waiving, the deliberative process privilege to the extent it might have applied. *See Mobil Oil Corp. v. EPA*, 879 F.2d 698, 700-701 (9th Cir. 1989) (disclosure beyond federal agencies generally waives the privilege). The Acting Administrator's notes are also in the public domain, and therefore any internal deliberations have already been revealed. This motion merely asks the Court to add them to the administrative record and consider them in deciding whether Administrator Pruitt acted arbitrarily and capriciously in denying the 2007 Petition and leaving unsafe chlorpyrifos tolerances in place for five or more years.

Only one document has yet to be disclosed – the draft of EPA's decision on the 2007 Petition immediately prior to the direction to reverse course. The fact that EPA was on track to revoke all chlorpyrifos tolerances is indisputable. It is also beyond dispute that Administrator Pruitt made an about-face. Because the draft is highly relevant to whether the Pruitt Order meets the standards of *Fox Television,*

if EPA invokes the deliberative process privilege, the Court should hold that the privilege is overcome by the draft's relevance to the APA claims presented in this case. *See FTC v. Warner Comm. Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984) (deliberative process privilege can be overcome by the relevance of the documents and lack of other evidence).

## II. IN THE ALTERNATIVE, THE MATERIALS ARE ADMISSIBLE AS EXTRA-RECORD EVIDENCE.

In the alternative, the materials fit within the exceptions for admitting extra-record materials. The Ninth Circuit has long recognized four exceptions to limiting review to the administrative record:

> [E]xtra-record evidence where admission of that evidence (1) is necessary to determine "whether the agency has considered all relevant factors and has explained its decision," (2) is necessary to determine whether "the agency has relied on documents not in the record," (3) "when supplementing the record is necessary to explain technical terms or complex subject matter," or (4) "when plaintiffs make a showing of agency bad faith."

*San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 992 (9th Cir. 2014) (quoting *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005)).

Here, the March documents will help the Court assess whether EPA considered all relevant factors or acted contrary to the record and for impermissible reasons. Apart from the Pruitt Order itself, the administrative record lacks any entries that provide insights into Administrator Pruitt's abrupt reversal of the agency's steady march toward revoking chlorpyrifos tolerances. The March

documents fill those gaps and supply missing links in the final stages of EPA's decision-making on the 2007 Petition. Where, as here, petitioners claim that an agency failed to consider relevant factors and made a decision based on impermissible ones, "[t]he court cannot adequately discharge its duty to engage in a 'substantive inquiry' if it is required to take the agency's word that it considered all relevant matters." *Asarco, Inc. v. EPA*, 616 F.2d 1153, 1160 (9th Cir. 1980).

CONCLUSION

For these reasons, this Court should hold that the March documents are part of the administrative record, or in the alternative, that they may be considered as extra-record evidence in determining whether the Pruitt Order is arbitrary and capricious in violation of the APA. The Court should direct EPA to provide LULAC with the latest draft of EPA's decision and associated actions in response to the 2007 Petition prior to the agency's change in direction in March 2017.

Dated: This 23rd day of January, 2018.

*<u>/s/ Patti A. Goldman</u>*
PATTI A. GOLDMAN
MARISA C. ORDONIA
KRISTEN L. BOYLES
Earthjustice
705 Second Avenue, Suite 203
Seattle, WA 98104
(206) 343-7340 | Phone
(206) 343-1526 | Fax
pgoldman@earthjustice.org
mordonia@earthjustice.org
kboyles@earthjustice.org

*Attorneys for Petitioners League of United Latin American Citizens, Pesticide Action Network North America, Natural Resources Defense Council, California Rural Legal Assistance Foundation, Farmworker Association of Florida, Farmworker Justice, United Farm Workers, GreenLatinos, Labor Council for Latin American Advancement, Learning Disabilities Association of America, National Hispanic Medical Association, and Pineros y Campesinos Unidos del Noroeste*

## CERTIFICATE OF SERVICE

I hereby certify that on January 23, 2018, I electronically filed the foregoing *MOTION TO COMPLETE THE ADMINISTRATIVE RECORD OR, IN THE ALTERNATIVE, TO CONSIDER EXTRA-RECORD EVIDENCE* with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the CM/ECF system, which will send notification of this filing to the attorneys of record and all registered participants.

I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

I declare under penalty of perjury that the foregoing is true and correct.

*/s/ Aanal Patel*
Aanal Patel